UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TIFFANY SKILES,

    Plaintiff,

v.                                      CASE NO. 3:16-cv-1165-J-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for a period of disability and disability insurance benefits ("DIB"), alleging disability beginning July 11, 2011. (Tr. 132.) A hearing was held before the assigned Administrative Law Judge ("ALJ") on January 7, 2015, at which Plaintiff was represented by counsel. (Tr. 32-57.) The ALJ found Plaintiff not disabled from July 11, 2011 through March 6, 2015, the date of the decision.[2] (Tr. 18-26.)

In reaching the decision, the ALJ found that Plaintiff had "the following severe impairments: lumbar degenerative disk disease with history of back surgery and bipolar II disorder." (Tr. 20.) The ALJ also found that Plaintiff had

---

    [1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Docs. 10, 12.)

    [2] Plaintiff had to establish disability on or before December 31, 2016, her date last insured, in order to be entitled to a period of disability and DIB. (Tr. 18.)

the residual functional capacity ("RFC") to perform a reduced range of light work. (Tr. 21.) After finding that Plaintiff was unable to perform any past relevant work, the ALJ found that there were jobs existing in significant numbers in the national economy that Plaintiff could perform. (Tr. 25.)

Plaintiff is appealing the Commissioner's decision that she was not disabled from July 11, 2011 through March 6, 2015. Plaintiff has exhausted her available administrative remedies and the case is properly before the Court. The Court has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the Commissioner's decision is **AFFIRMED**.

I. Standard

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937

F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.     Discussion

Plaintiff argues that the ALJ did not provide good cause for rejecting the opinions of her treating physician, John Carey, M.D., because the reasons he offered were either legally insufficient and/or factually inaccurate. Plaintiff contends that in formulating the RFC, the ALJ's discussion of the record was "limited and highly selective." Plaintiff adds that in discrediting Dr. Carey's opinions, the ALJ misrepresented her daily activities. Plaintiff asserts that by failing to adopt Dr. Carey's assessed limitations, the ALJ formulated an RFC assessment and hypothetical questions to the Vocational Expert ("VE"), which failed to accurately describe all of Plaintiff's limitations, and as such, the ALJ improperly relied on the VE's testimony. Plaintiff also argues that the ALJ erroneously relied on Dr. Charles E. Moore's non-examining opinions, which were rendered 19 months before the hearing without consideration of Dr. Carey's subsequent opinions.

Defendant responds that the ALJ provided good reasons, supported by

3

substantial evidence, for giving Dr. Carey's opinions little weight. The Court agrees with Defendant and, therefore, affirms the Commissioner's decision.

## A. Standard for Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making a disability determination. *See* 20 C.F.R. § 404.1520(a)(3). With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

"'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical evidence supporting the opinion, (4) consistency of the medical opinion with the record as a whole, (5) specialization in the medical issues at issue, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6). "However, the

4

ALJ is not required to explicitly address each of those factors. Rather, the ALJ must provide 'good cause' for rejecting a treating physician's medical opinions." *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. June 22, 2011) (per curiam).

Although a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam); 20 C.F.R. § 404.1527(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," *Cooper v. Astrue*, 2008 WL 649244, *3 (M.D. Fla. Mar. 10, 2008). Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2007) (per curiam); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

"The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. May 2, 2008) (per curiam); *see also* SSR 96-6p (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining sources). While the ALJ is not bound by the findings of non-examining physicians, the ALJ may not ignore these opinions and must explain the weight

given to them in his decision. SSR 96-6p.

### B. The ALJ's Decision

The ALJ found that Plaintiff had the RFC to perform light exertional work as follows:

> [The claimant] must have a 30-minute sit/stand option. The claimant can occasionally climb ramps and stairs but never can climb ladders, ropes, or scaffolds. She cannot balance but can occasionally stoop, kneel, crouch, and crawl. The claimant cannot reach overhead or tolerate concentrated exposure to extreme cold or vibrations. Additionally, the claimant is limited to simple tasks with little variation that take a short period of time to learn, up to and including 30 days. She could tolerate changes in a routine work setting and tolerate occasional contact with coworkers and the general public. The claimant could relate adequately to supervisors.

(Tr. 21.) In making this finding, the ALJ considered Plaintiff's testimony, the Function Report completed on January 3, 2013, Plaintiff's treatment records, including the opinions of Dr. Carey, Plaintiff's pain management specialist at Jacksonville Spine Center, the results of diagnostic studies, and the opinions of the State agency non-examining consultant, Dr. Moore. (Tr. 22-23.)

The ALJ addressed Plaintiff's testimony as follows:

> At the hearing, the claimant testified that she cannot work because of constant low back pain that shoots down the back of her left leg and causes numbness on the top of her left foot. The claimant testified that she can stand for 30 minutes at a time, walk for 15 to 20 minutes at a time, sit for 45 minutes at a time, and lift and carry less than 5 pounds. She stated that she must lie down for four or five hours during the day and that pain medication and ice packs are somewhat helpful though the pain medication causes drowsiness. . . . The claimant is married and has two children, ages 11 and 4. She stated she can drive but chooses not to. The claimant helps with some of

6

> the household chores and stated that her parents and babysitters are helpful. . . . She underwent spinal surgery years ago and no additional surgery is planned.

(Tr. 22.)

Then, the ALJ turned to the Function Report completed by Brian Skiles, Plaintiff's husband, on Plaintiff's behalf on January 3, 2013:

> [I]t was reported that the claimant has no problem taking care of her personal needs. She spends her day doing light housework and preparing simple meals. She provides care to her young child including bathing him and supervising his activities. The claimant watches television and plays with her children. She goes out with her husband and goes on Facebook. She frequents restaurants and movie theaters. The claimant drives and can pay bills, count change, handle a savings account, and use a checkbook/money orders. She can follow written and spoken instructions. The claimant can lift 10 pounds and walk for 30 minutes at a time. The claimant did not return to work after her husband graduated from (pharmacy) school (Exhibit 6E).

(*Id.*)

The ALJ also addressed the pertinent medical records as follows:

> The record notes that the claimant underwent L5-S1 laminectomy in June of 2008 (Exhibit 5F). An MRI of the lumbar spine performed on July 18, 2011 showed just minimal degenerative disk disease and desiccation of L5-S1. . . .
>
> The claimant received care for her back at Jacksonville Spine Center. At an office visit on December 19, 2012, the claimant stated she received relief from medication and experienced no medication side effects. She also reported that she was trying to get pregnant. Examination notes reveal full 5/5 strength and a normal gait (Exhibit 5F/3). The claimant continued to report no medication side effects at several subsequent visits (Exhibit 7F; 8F; 12F).
>
> An MRI of the claimant's lumbar spine performed on December 28,

7

> 2012 showed disk desiccation and postoperative changes at L5-S1 and minimal recurrent/residual central disk herniation (protrusion) but no nerve root impingement or displacement. This is noted as improved compared to the preoperative study (Exhibit 6F/2).
>
> On January 17, 2013, the claimant underwent a transforaminal steroid injection to help control the pain (Exhibit 8F/4).
>
> . . .
>
> X-rays of the claimant's spine taken on February 17, 2014 showed no acute fracture or subluxation, satisfactory lumbar fusion of L5-S1, and satisfactory alignment. Additional films showed no evidence of abnormal subluxation with flexion or extension maneuvers (Exhibit 12F/17-18).
>
> Notes from a follow up visit to Jacksonville Spine Center on November 10, 2014 reveal that the claimant is doing well on her current medication regime and that her pain level as [sic] just a 2 out of 10. It is again noted that she experiences no medication side effects (Exhibit 13F/5).

(Tr. 23-24.)

With respect to Dr. Carey's opinions in the Functional Capacity Evaluation ("FCE") and the Physical RFC Questionnaire, the ALJ determined that these opinions deserve little weight because they are not supported by the treatment notes or the record as a whole and were inconsistent with Plaintiff's reported daily activities. (Tr. 23.) Further, the ALJ gave limited weight to Dr. Moore's opinions after determining that Plaintiff had "even greater restrictions than those issued by the State agency physician."[3] (*Id.*)

---

[3] Dr. Carey's opinions in the FCE and the Physical RFC Questionnaire, as well as Dr. Moore's opinions in the Physical RFC Assessment are discussed *infra*.

8

The ALJ found, for the reasons explained in his decision, that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (Tr. 24.) The ALJ explained:

> In assessing the claimant's credibility, she reported (Exhibits 6E; 9F) a wide array of daily activities that can be physically and mentally demanding and are not the type expected from a totally disabled individual. The record notes (Exhibit 2F) [sic] the claimant reported feeling overwhelmed caring for two children though at around that time the claimant reported (Exhibit 5F) trying to get pregnant and have another child. Additionally, it was noted that the claimant stopped working once her husband graduated (Exhibit 6E) further indicating that there may be reasons other than her condition for her continued unemployment.
>
> The claimant testified that no further surgery has been recommended for her back. . . .
>
> In sum, the above [RFC] assessment is supported by the frequency and level of care the claimant has received in response to her reported complaints. Although the claimant has limitations, they would not prevent her from performing work activity at the level noted in the [RFC] above.

(*Id.*)

### C. Relevant Opinion Evidence

#### 1. Dr. Carey

In an FCE completed on December 5, 2013, Dr. Carey opined that Plaintiff was unable to perform even sedentary work. (Tr. 407-09.) He stated, in relevant part:

9

> At [the] time of testing, [Plaintiff] was observed demonstrating intermittent changes of position from sitting to standing throughout [the] testing for reported disruption of pain symptoms. The lowest level of pain experienced in [the] last 30 days is moderate pain rating of 4, with use of medication, and minimizing or avoiding activities of daily living that result in aggravation, or increase of pain symptoms. She claims intense pain level of 8 as the highest level of pain experienced in the last 30 days with attempts to increase functional activities of daily living. . . . Maximal and 5-position isometric hand grip testing indicated significant bilateral hand grip weakness . . . . She would also be limited with ability to participate with [sic] sustained or frequent basis, due to her poor tolerance to prolonged periods of sitting, standing and walking, from her claims of requiring intermittent supportive positional lying down or reclining, totaling 3-4 hrs., to assist with management of progressive elevation of pain symptoms throughout the day. She would also be limited due to reported 4 episodic pain flare-up [sic] a month resulting in 4 days of incapacitating pain severity. The client also indicated minimizing or avoiding driving due to pain and physical limitations.

(Tr. 407.)

In his Physical RFC Questionnaire completed on January 3, 2014, Dr. Carey opined, *inter alia*, that Plaintiff could walk one or two city blocks without rest or severe pain, sit for 45 minutes to an hour at one time, stand for 30 minutes at one time, stand/walk for less than two hours in an eight-hour workday, and sit for four hours in an eight-hour workday; she would need unscheduled breaks lasting ten minutes; she could occasionally lift and carry less than ten pounds and never over ten pounds; she should never reach above shoulder level; and she would likely be absent from work two days per month as a result of her impairments. (Tr. 404-06.) Under clinical findings and objective signs, he noted limited range of motion, tenderness to palpation, and prior laminectomy. (Tr.

10

404.) Dr. Carey also noted that Plaintiff's low back pain and lower left extremity pain ranged from a five to an eight on a scale of zero to ten, and worsened with bending over and prolonged sitting or standing. (*Id.*) He opined that Plaintiff's pain was severe enough to occasionally interfere with attention and concentration needed to perform even simple work tasks. (*Id.*)

### 2.    Dr. Moore

In a Physical RFC Assessment completed on May 2, 2013, Dr. Moore opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for four hours, and sit for about six hours in an eight-hour workday; frequently climb ramps/stairs, crouch, and crawl; occasionally stoop and climb ladders, ropes, or scaffolds; and should avoid concentrated exposure to hazards. (Tr. 75-78.)

### D.    Analysis

The ALJ provided good reasons, supported by substantial evidence, for according little weight to Dr. Carey's opinions in the FCE and the Physical RFC Questionnaire. The ALJ stated that Dr. Carey's opinions were not supported by the treatment notes or the record as a whole and were inconsistent with Plaintiff's reported daily activities. (Tr. 23.) The ALJ discussed some of the pertinent medical records and Plaintiff's reported activities in formulating his RFC.

For example, the ALJ noted the results of the lumbar MRI's performed on July 18, 2011 and December 28, 2012, as well as the lumbar X-rays taken on

February 17, 2014. Plaintiff's July 18, 2011 lumbar MRI was normal "except for mild disk desiccation and degeneration of the L5-S1 disk." (Tr. 262.) Plaintiff's December 28, 2012 MRI showed "[d]isc desiccation and postoperative change at L5-S1," "a minimal recurrent/residual central disc herniation (protrusion) at this level[,] but no nerve root impingement or displacement." (Tr. 340.) This was deemed an improvement compared to the pre-operative study. (*Id.*) Plaintiff's February 17, 2014 five-view X-ray of the lumbar spine showed: "No acute fracture or subluxation. Satisfactory lumbar fusion L5-S1 . . . . Satisfactory alignment." (Tr. 426.) Her flexion/extension lumbar X-ray from the same date showed: "No evidence of abnormal subluxation with flexion or extension maneuvers." (Tr. 427.)

The ALJ also discussed the treatment records from Jacksonville Spine Center, which showed full strength, normal gait, relief from medication, no medication side effects, a pain level ranging from two to six on a scale of zero to ten, and which indicated that Plaintiff was trying to get pregnant. The ALJ's recitation of the records is accurate, even though there is also evidence of decreased range of motion, some tenderness or swelling at times, and an antalgic gait. (*See, e.g.*, Tr. 237, 318-19, 321, 324, 327, 330, 333, 354, 359-60, 367-68, 375, 379, 383, 387-88, 391, 412-13, 416, 419, 436, 439, 442.) Despite some abnormal examination findings and Plaintiff's reports of unresolved lower back pain and leg pain since her back surgery, the ALJ properly observed that no

further surgery was recommended or desired (Tr. 238 ("I have advised this patient to continue pain management only.")[4], Tr. 326 ("[Patient] doesn't want any more surgery on L-spine.")), and, in fact, Plaintiff was trying to get pregnant (Tr. 318, 323, 326, 329, 332, 337).

The ALJ also observed that Plaintiff's reported daily activities were inconsistent with Dr. Carey's opinions.  Dr. Carey opined that Plaintiff would be unable to perform even sedentary work.  (Tr. 407-09.)  However, as noted by the ALJ, Plaintiff reported that she has no problem taking care of her personal needs, she spends her day doing light housework and preparing simple meals, she provides care to her young child, including bathing him and supervising his activities, she watches television and plays with her children, she goes out with her husband, she uses Facebook, she can drive, but chooses not to, she can pay bills, count change, handle a savings account, and use a checkbook/money orders.  (Tr. 22, 48, 185-92.)  The Court does not see any error in the ALJ's recitation of Plaintiff's daily activities, but even assuming there was an error in this regard, the daily activities were only one factor in the ALJ's RFC determination.

Based on the foregoing, the Court finds that the ALJ's reasons for giving little weight to Dr. Carey's opinions are supported by substantial evidence.  To the extent Plaintiff invites the Court to re-weigh the evidence or substitute its decision

---

[4] Plaintiff's medication was changed and/or adjusted at times.  (*See, e.g.*, Tr. 385, 392.)

for that of the ALJ, the Court cannot do so. As long as the ALJ's findings are based on correct legal standards and are supported by substantial evidence, the Commissioner's decision must be affirmed even if the reviewer would have reached a different conclusion.

Plaintiff also argues that the ALJ erroneously relied on Dr. Moore's non-examining opinions, which were rendered well before the hearing and prior to Dr. Carey's more recent opinions. However, the ALJ gave Dr. Moore's opinions only limited weight and determined that Plaintiff had greater restrictions than assessed by this doctor. Therefore, it does not appear that the ALJ relied on Dr. Moore's opinions. Importantly, in formulating the RFC and hypothetical questions, the ALJ was not required to adopt the findings or opinions of any particular medical source because the responsibility for assessing the RFC rests with the ALJ. *Kopke v. Astrue*, 2012 WL 4903470, *5 (M.D. Fla. Sept. 26, 2012) (report and recommendation adopted by 2012 WL 4867423 (M.D. Fla. Oct. 15, 2012)).

Finally, to the extent Plaintiff argues that the ALJ erred in assessing Plaintiff's credibility, the Court finds that the ALJ provided explicit and adequate reasons for his credibility determination. These reasons included Plaintiff's daily activities, the frequency and level of care Plaintiff received in response to her complaints, including the fact that no further surgery has been recommended for her back, and the fact that Plaintiff stopped working once her husband graduated from pharmacy school. (Tr. 24.) As these reasons are adequate and supported

14

by substantial evidence, the Court finds no reason to disturb the ALJ's credibility analysis.

Because the ALJ's credibility determination, RFC assessment, and hypothetical questions are supported by substantial evidence, Plaintiff's argument that the ALJ improperly relied on the VE's testimony is rejected. The ALJ was not required to include in the hypothetical questions any limitations or opinions that he properly rejected. *See Crawford*, 363 F.3d at 1161 (stating that the ALJ is not required to include findings in the hypothetical question that the ALJ has properly rejected as unsupported by the record). Thus, to the extent Plaintiff argues that the hypothetical questions were inconsistent with Dr. Carey's opinions and/or Plaintiff's subjective complaints, the ALJ was not required to include opinions or statements that he had properly rejected.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **AFFIRMED**.

2. The Clerk of Court is directed to enter judgment consistent with this Order and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on December 8, 2017.

_____
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record